AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

1334 Valley Place SE
Washington, DC 20020

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ____Robert L. Werner_____ being duly sworn depose and say:

I am a(n)____Special Agent with Federal Bureau of Investigation_____ and have reason to believe
            (Official Title)
that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location)

See Attachment A which is attached hereto and incorporated fully by reference herein.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

See Attachment B which is attached hereto and incorporated fully by reference herein.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

fruits, evidence, and instrumentalities,

concerning a violation of Title  18 United States Code, Section(s) § 1341, 1347, 1028, 1028A, 1349 & 42 United States Code, Section 408 .  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.   ☒ YES  ☐ NO

Jonathan W. Haray
Fraud and Public Corruption Section
(202) 353-2877

Sworn to before me, and subscribed in my presence

_____
Date

Signature of Affiant
Robert L. Werner, Special Agent
Federal Bureau of Investigation

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

DISTRICT OF COLUMBIA

Washington, D.C.

<u>AFFIDAVIT</u>

I, Robert L. Werner, being duly sworn, depose and state:

I.    I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) and have

been so employed since June 1997.  I am assigned to a white collar crime squad at the Northern

Virginia Resident Agency of the Washington Field Office, Falls Church, Virginia, and have been

so assigned since October 1997.

II.    This Affidavit is in support of an application for a search and seizure warrant for 1334

Valley Place SE, Washington, D.C. 20020 for evidence of violations of:

a.)  Mail Fraud (18 U.S.C. § 1341)

b.)  Health Care Fraud (18 U.S.C. § 1347)

c.)  Fraud and Related Activity in Connection with Identification Documents (18 U.S.C. § 1028)

d.)  Aggravated Identity Theft (18 U.S.C. §  1028A)

e.)  Attempt and Conspiracy (18 U.S.C. § 1349)

f.)  Mis-Use of a Social Security Number (42 U.S.C. § 408)

III.    As a result of my personal participation in the investigation of matters referred to in this

affidavit, I am familiar with the facts and circumstances of this investigation.  On the basis of that

familiarity, I have determined the following:

1.0    <u>INTRODUCTION</u>

1.    By virtue of my training and experience as a Special Agent, I am familiar with

investigations involving individuals who have devised or intended to devise schemes and/or

1

artifices to defraud, or obtain money or property by means of false or fraudulent pretenses, representations, or promises.

2.    I am investigating a group of Washington, D.C. residents who, the evidence shows, are filing multiple, fraudulent automobile insurance claims seeking compensation for bodily injury and property damage suffered in fictitious automobile accidents.  Among these persons are Dana L. Greene, Steven Antonio Ishmell, and William Steve Ishmell, also known as: Derrick Andrew Ishmell; Derrick Ishmell, Sr.; Anthony Ishmell; and Anthony Ishmell, Jr.  Many of these claims involve the use of an Arlington, Virginia attorney who, on behalf of Ishmell, Greene and other related individuals, negotiated and attempted to negotiate financial settlements for bodily injury with victim insurance companies.

3.    During the course of this investigation, I have had conversations with representatives of the victim insurance companies and have requested and reviewed claim files associated with subjects of this investigation.

4.    I learned from review of insurance company claim file information that William Steve Ishmell and other subjects, some named above, are submitting false information to insurance companies in an effort to settle the claims.  This includes false names, false dates of birth, false Social Security numbers, and false statements of employment and earnings.  These individuals are also settling and attempting to settle multiple claims of property damage to vehicles, typically submitting the same vehicle with the same damage, in an attempt to maximize payments from the victim insurance companies.  As a result of these claims, victim insurance companies have paid over $170,000 to settle bodily injury and property damage claims filed by subjects of this investigation.  Victim insurance companies have identified and refused to pay suspicious claims

and settlement demands totaling approximately an additional $150,000.

5.    According to information contained in insurance company files for claims filed in 2007, auto insurance policy application information submitted by a person whom the evidence shows to be William Steve Ishmell, and information provided by the U.S. Postal Inspection Service, William Steve Ishmell currently resides at 1334 Valley Place SE, Washington, DC 20020.

2.0    <u>PROBABLE CAUSE</u>

2.1    <u>WILLIAM ISHMELL'S CRIMINAL HISTORY REFERENCES HIS USE OF</u>
        <u>MULTIPLE IDENTIFIERS</u>

6.    I reviewed a Computerized Criminal History (CCH) for William Steve Ishmell, date of birth: xxxxxxx x, 1956; FBI Number: 841375RA6. Included in Ishmell's CCH is information indicating that he is also known as Derrick Andrew Ishmell and Anthony Ishmell, Jr., and that Ishmell is associated with Social Security Numbers xxx-xx-9822 and xxx-xx-2574.

2.2    <u>WILLIAM ISHMELL PROVIDED FALSE INFORMATION TO OBTAIN ALIAS</u>
        <u>IDENTIFICATION</u>

    A.    <u>VIRGINIA DEPARTMENT OF MOTOR VEHICLES</u>

7.    I reviewed Virginia Department of Motor Vehicle (VADMV) records for Derrick Andrew Ishmell, customer number:xxxxx4782, date of birth: xxxxxxx xx, 1967, Social Security Number: xxx-xx-9822, and learned that Ishmell first obtained a Virginia driver's license on or about October 1, 1998 upon surrendering his Washington, D.C. driver's license, number xxx-xx-9822.

8.    The Social Security Administration informed me that Social Security Number xxx-xx-9822 is not assigned to Derrick Andrew Ishmell born on xxxxxxx xx, 1967; It is assigned to Derrick Andrew Ishmell born on xxxx xx, 1989.

9.    I reviewed VADMV  photographs of Derrick Andrew Ishmell, date of birth: xxxxxxx xx,

1967, customer number:xxxxx4782, and William Steve Ishmell, date of birth: xxxxxxxx x, 1956;

customer number xxxxx4369.  Based on the physical similarities between the persons shown in

the photographs, I believe that William Steve Ishmell and Derrick Andrew Ishmell are in fact the

same person, namely, William Steve Ishmell.

10.    VADMV records which I reviewed further document that on December 30, 2004, in

Tyson's Corner, Virginia, an individual whom the evidence shows to be William Steve Ishmell

renewed his Virginia driver's license by falsely representing on a VADMV application that his

name is Derrick Andrew Ishmell, his date of birth is xxxxxxx xx, 1967, and that his Social

Security Number is xxx-xx-9822.  VADMV records from December 20, 2004  include the

photograph of Derrick Andrew Ishmell referred to in paragraph 9, above.

  B.    DISTRICT OF COLUMBIA DEPARTMENT OF MOTOR VEHICLES

11.    I reviewed District of Columbia Department of Motor Vehicles (DCDMV) records related

to Anthony Ishmell, Jr.; license number: xxx9802 date of birth: xxxxxxx xx, 1960;  Social

Security Number: xxx-xx-2574, and learned that Ishmell renewed this driver's license on January

19, 2007.

12.    The Social Security Administration informed me that Social Security Number xxx-xx-

2574, which Ishmell used to procure his driver's license from DCDMV, has never been issued.

13.    I compared the photograph of Anthony Ishmell, Jr. on DCDMV license number xxx9802

with VADMV  photographs of Derrick Andrew Ishmell, date of birth: xxxxxxx xx, 1967,

customer number: xxxxxx4782, and William Steve Ishmell, date of birth: xxxxxxxx x, 1956;

customer number xxxxx4369.  Based on the physical similarities between the persons shown in

the photographs, I believe that William Steve Ishmell, Derrick Andrew Ishmell, and Anthony

Ishmell, Jr. are in fact the same person, namely, William Steve Ishmell.

2.3    WILLIAM ISHMELL AND DANA GREENE PROVIDED FALSE INFORMATION TO
        INSURANCE COMPANIES

    A)    MARCH 20, 2005 AUTOMOBILE ACCIDENT

14.    I reviewed a copy of Progressive Insurance (Progressive) claim file number 055629347,

which documents a March 20, 2005 auto accident involving a bodily injury claim filed by

Derrick A. Ishmell, date of birth: xxxxxxx xx, 1967, who the evidence shows to be William

Steve Ishmell.  The following items and information are contained in the Progressive claim file,

or were obtained from the results of my investigation.

    a)    On or about March 14, 2005, Dana Greene rented a 2005 Buick LeSabre from Enterprise

Rent-A-Car, Arlington, Virginia.  At the time of the rental, Greene designated Derrick Ishmell

and Steve Ishmell as additional authorized drivers.

    b)    On March 20, 2005, Derrick A. Ishmell was driving the 2005 Buick LeSabre rented by

Dana Greene when he was involved in an automobile accident with a Progressive auto insurance

policyholder.  He subsequently filed a claim against the other driver's policy.  Ishmell claimed to

suffer a neck sprain/strain, a thoracic sprain/strain and a lumbar sprain/strain.

    c)    A March 21, 2005 letter from attorney, D.S., Arlington, Virginia, to Tyrese Coleman,

Progressive Insurance, advising that his office has been retained to represent Derrick Ishmell for

his claim of damages arising from the March 20, 2005 automobile accident.

    d)    A typed letter signed by Dana Greene, Eureka Van & Storage Company, Inc, referencing

the March 20, 2005 accident.  The letter states that Derrick Ishmell is an employee of Eureka Van

5

& Storage, works an average of 40 hours per week and 10 hours overtime, earning $17.50 per hour. The letter further states that due to injuries from the accident, Ishmell was unable to work from March 20, 2005 through April 22, 2005, and would have earned $3,850.00 had he worked during that time period. The letter provides a contact phone number for Dana Greene of (703) 786-9377.

i.)    I interviewed Harold Frank Burby, Jr., Vice President of Eureka Van & Storage Company (EVS), who reviewed the above referenced letter and stated that the letter is not printed on authentic EVS letterhead. Burby also told me that EVS has no records of employees named Dana Greene or Derrick Ishmell, but did once employ an individual named William Ishmell. William Ishmell did not work for EVS at any time during 2005.

e)    A Medisyn Provider Network LLC form documenting that on March 22, 2005, Derrick Ishmell, date of birth: xxxxxxx xx, 1967, Social Security Number: xxx-xx-9822, was evaluated by Dr. Anthony Ward, DC pursuant to injuries Ishmell reportedly suffered in the March 20, 2005 automobile accident.

i.)    The Social Security Administration informed me that Social Security Number xxx-xx-9822 is not assigned to Derrick Andrew Ishmell born on xxxxxxx xx, 1967; it is assigned to Derrick Andrew Ishmell born on xxxx xx, 1989.

f)    A May 7, 2005 letter from attorney, D.S., Arlington, Virginia, to Lucille Ellerbe, Progressive, Leesburg, Virginia, advising that Derrick Ishmell incurred $2,748.00 in medical expenses and suffered $3,850.00 in lost wages, and will settle his case for $42,000.00.

g)    A Progressive Release of All Claims and Indemnity Agreement, signed by Derrick

Ishmell, whereby Ishmell agreed to settle, for $6,000.00, his claim for injuries arising from the

March 20, 2005 accident.

h)    Claim log notes and a copy of a check documenting that on June 10, 2005, Progressive

issued a $6,000.00 claim check payable to Derrick A. Ishmell and his Attorney, D.S., and mailed

the check to D.S.'s office at 3017C Clarendon Boulevard, Arlington, Virginia 22201.

B)    <u>JULY 8, 2005 AUTOMOBILE ACCIDENT</u>

15.    I reviewed a copy of United Services Automobile Association (USAA) claim file number

010432359, which documents a July 8, 2005 auto accident involving bodily injury claims filed

by Derrick Ishmell, Sr.; date of birth: xxxxxxx xx, 1967 (who the evidence shows to be William

Steve Ishmell); Derrick Ishmell, Jr., date of birth: xxxx xx, 1989; and Dana Greene, date of birth:

xxxxxxxx x, 1977 (collectively referred to as the claimants).  The following items and

information are contained in the USAA claim file, or were obtained from the results of my

investigation.

a)    The claimants were involved in an automobile accident with a USAA policyholder, and

subsequently filed claims against this individual's policy.   Derrick Ishmell, Sr. claimed injuries

to his chest, shoulder, neck, and back.  Derrick Ishmell, Jr. claimed injuries to his back, head, and

shoulders.  Dana Greene claimed injuries to her lower back and right knee.

b)    A July 18, 2005 letter from attorney, D.S., Arlington, Virginia, to Sharon Atkins, USAA,

San Antonio, Texas, advising that his office has been retained to represent Derrick Ishmell, Sr.,

Derrick Ishmell, Jr., and Dana Greene for their claim of damages arising from the July 8, 2005

automobile accident.

7

c)      A Metropolitan Police Department Traffic Accident Report documenting the facts of the accident.  The driver of the claimant vehicle provided as identification to the responding police officer his Virginia driver's license, number: xxxxxx4782, identifying him as Derrick Andrew Ishmell, date of birth: xxxxxxx xx, 1967.

d)      A typed letter signed by Leon Cole, Eureka Van & Storage Company, Inc, referencing the July 8, 2005 accident.  The letter states that Derrick Ishmell, Sr. is an employee of Eureka Van & Storage Company, works an average of 40 hours per week and 20 hours overtime, earning $10.50 per hour.  The letter further states that due to injuries from the accident, Ishmell, Sr. was unable to work from July 9, 2005 through July 20, 2005, and would have earned $735.00 had he worked during that time period.  The letter provides a contact phone number for Cole of (703) 786-9377.

i.)      I interviewed Harold Frank Burby, Jr., Vice President of Eureka Van & Storage Company (EVS), who provided the following information after reviewing the EVS letter presented to USAA by Derrick Ishmell, Sr. in support of his claim for bodily injury and lost wages:  EVS has no record of an employee named Derrick Ishmell, Sr.  EVS once employed an individual named William Ishmell, who worked directly for Leon Cole, the name at the bottom of the subject letter.  William Ishmell was not employed with EVS during the time frame stated in the letter.  The phone number at the bottom of the letter, (703) 786-9377, is not a phone number associated with EVS.

ii.)      I reviewed subscriber records for telephone number (703) 786-9377, which show this number is a cellular phone assigned to Eric Bediako Lokko of xxxx xxxxxxxxx xxxxx, Springfield, Virginia 22152.

8

iii.)    I reviewed Nationwide Insurance (Nationwide) claim file number 5345262511, documenting Dana Greene's claim for the reported theft of her 1996 Pontiac.  Greene provided Nationwide with a home address of xxxx xxxxxxxxx xxxxx, Springfield, Virginia 22152.  She also provided Nationwide with an alternate contact phone number of (703) 786-9377.

iv.)    I reviewed Virginia Department of Motor Vehicle records for driver's licenses associated with Dana Greene and found that Greene holds Virginia license number xxxxx0597, issued September 13, 2005, listing her home address as xxxx xxxxxxxxx xxxxx, Springfield, Virginia 22152.

v.)    I reviewed EVS records related to William Ishmell and learned that William Steve Ishmell was born on xxxxxxxx x, 1956 and is assigned Social Security Number: xxx-xx-1906.  Ishmell claimed prior employment with Sunrise, Arlington, Virginia, and listed his supervisor as Dana Greene.  Ishmell's EVS file also contains a copy of Virginia identification card number xxx-xx-1906, assigned to William Steve Ishmell, date of birth: xxxxxxxx x, 1956.

e)    A typed letter signed by Carlene Young, Allied Security, referencing the July 8, 2005 accident.  The letter states that Dana Greene is an employee of Allied Security Services, works an average of 40 hours per week and 10 hours overtime, earning $10.00 per hour.  The letter further states that due to injuries from the accident, Greene was unable to work from July 9, 2005 through July 20, 2005, and would have earned $650.00 had she worked during that time period.

i.)    I interviewed Cara Greene, Human Resources Assistant with Allied-Barton Security Services (ABSS), who provided the following information after reviewing the letter which Dana Greene provided to USAA in support of her claim for bodily injury and lost wages:  Dana Greene was employed with ABSS between May 7, 2004 and June 9, 2005.  Dana Greene's employment

9

was terminated on June 9, 2005, and she was therefore not employed between July 9, 2005 and July 20, 2005, as represented in the letter signed by Carlene Young. ABSS has no record of a past or present employee named Carlene Young.

    f)    A Medisyn Provider Network LLC form documenting that on July 13, 2005, Derrick Ishmell, Sr, date of birth: xxxxxxx xx, 1967, Social Security Number: xxx-xx-9822, was evaluated by Dr. Anthony Ward, DC pursuant to injuries Ishmell, Sr. reportedly suffered in the July 8, 2005 automobile accident.

    i.)    The Social Security Administration informed me that Social Security Number xxx-xx-9822 is not assigned to Derrick Andrew Ishmell born on xxxxxxx xx, 1967, it is assigned to Derrick Andrew Ishmell born on xxxx xx, 1989.

    g)    An August 23, 2005 letter from attorney, D.S., Arlington, Virginia, to Sharon Atkins, USAA, San Antonio, Texas, advising that Derrick Ishmell, Sr. incurred $1,162.00 in medical expenses and suffered $735.00 in lost wages, and will settle his case for $8,500.00.

    h)    A September 1, 2005 letter from attorney, D.S., Arlington, Virginia, to Sharon Atkins, USAA, San Antonio, Texas, advising that Dana Green incurred $2,954.00 in medical expenses and suffered $650.00 in lost wages, and will settle her case for $25,000.00.

    i)    An October 27, 2005 letter from attorney, D.S., Arlington, Virginia, to Sharon Atkins, USAA, San Antonio, Texas, advising that Derrick Ishmell, Jr. will settle his case for $14,000.00

    j)    Claim file log notes indicating that on October 3, 2005, USAA issued a $3,700.00 claim check payable to D.S. and Derrick Ishmell, Sr., and mailed the check along with a Full and Final Release for All Injury Claims to Include All Liens Known and Unknown, to D.S.'s office at 3017C Clarendon Boulevard, Arlington, Virginia 22201.

k)    A USAA Release of All Claims and Hold Harmless Agreement, signed by Derrick Ishmell, Sr. on October 12, 2005 at Arlington, Virginia, whereby Ishmell, Sr. agrees to settle, for $3,700.00, his claim for injuries arising from the July 8, 2005 accident.

l)    Claim file log notes indicating that on October 21, 2005, USAA issued a $6,000.00 claim check payable to D.S. and Dana Greene, and mailed the check along with a Full and Final Release for All Injury Claims to Include All Liens Known and Unknown, to D.S.'s office at 3017C Clarendon Boulevard, Arlington, Virginia 22201.

m)    A USAA Release of All Claims and Hold Harmless Agreement, signed by Dana Greene on November 1, 2005 at Arlington, Virginia, whereby Greene agreed to settle, for $6,000.00, her claim for injuries arising from the July 8, 2005 accident.

n)    Claim file log notes indicating that on November 14, 2005, USAA issued a $5,100.00 claim check payable to D.S. and Derrick Ishmell, Sr., Parent of Payee, Minor child, Derrick Ishmell, Jr., and mailed the check along with a Full and Final Release for All Injury Claims to Include All Liens Known and Unknown, to D.S.'s office at 3017C Clarendon Boulevard, Arlington, Virginia 22201.

o)    A USAA Release of All Claims and Hold Harmless Agreement, signed by Derrick Ishmell, Sr., on November 21, 2005, on behalf of Derrick Ishmell, Jr., whereby Derrick Ishmell, Jr. agreed to settle, for $5,100.00, his claim for injuries arising from the July 8, 2005 accident.

16.    My investigation has further revealed that subjects have filed at least seventy-seven (77) insurance claims between June 1994 and October 2007.  These claims were filed by the person previously identified herein as William Steve Ishmell, or members of his family, including: Dana Greene; Steven Ishmell; Kimberly Ishmell; Kelata Ishmell; Keanna Ishmell; Donna Ishmell; and

11

Christine Ishmell. Sixty (60) of these claims were filed in 2004 and later; thirteen (13) claims were filed between April 2007 and October 2007.

2.4    WILLIAM ISHMELL OBTAINED A 2007 AUTOMOBILE INSURANCE POLICY
       USING ANOTHER PERSON'S IDENTITY AND FILED CLAIMS AGAINST THIS
       POLICY

17.    I received and reviewed  information from Government Employees Insurance Company (GEICO) indicating that the person who the evidence shows to be William Steve Ishmell, using the alias Anthony Ishmell, a false date of birth of xxxxxxx xx, 1960, a false Social Security Number of xxx-xx-2574, and presenting District of Columbia driver's license number xxxx9802 (the licensed referenced in paragraph 11, above), purchased a GEICO automobile insurance policy on or about May 21, 2007.  Ishmell listed his home address as 1334 Valley Place SE, Washington, DC 20020.

18.    I received and reviewed information from GEICO indicating that the person who the evidence shows to be William Steve Ishmell, using the alias Anthony Ishmell, a false date of birth of xxxxxxx xx, 1960, and a false Social Security Number of xxx-xx-2574, filed a vehicle property damage claim on October 29, 2007.  During the claim process, and as late as November 7, 2007, Ishmell represented to GEICO that he resided at 1334 Valley Place SE, Washington, DC 20020.

19.    I reviewed insurance claim information provided by GEICO and learned that at least nine claims have been filed against the fraudulently obtained GEICO policy of Anthony Ishmell. These include claims for accidents reportedly occurring on June 14, 2007; July 4, 2007; August

7, 2007; August 18, 2007; August 25, 2007; September 5, 2007; September 25, 2007, October 16, 2007, and October 29, 2007.

20.    I reviewed the GEICO claim file for claim number 0324920270101098, filed against the Anthony Ishmell GEICO policy that, the evidence shows, was fraudulently obtained by William Steve Ishmell.  I learned from review of this claim file that on or about October 16, 2007,  Donna Ishmell contacted GEICO and reported damage to the left front fender of a 1989 Toyota Camry owned by Anthony Ishmell.

21.    The GEICO claim file for the October 16, 2007 loss contains a claim summary indicating that Anthony Ishmell brought the damaged Toyota Camry to GEICO's inspection station in Clinton, Maryland.  GEICO verified ownership of the vehicle by asking for Ishmell's driver's license and registration.  The claim summary notes that a $337.01 check was made payable to Ishmell.

22.    The GEICO claim file for the October 16, 2007 loss contains a copy of GEICO check number N82602458, payable to Anthony Ishmell, Jr., 1334 Valley Place SE, Washington, DC 20020, in the amount of $337.01.   The back of this check contains a signature for Anthony Ishmell and the notation "DC xxx9802 x/xx/60" which corresponds to the information (license number and date of birth) on the District of Columbia driver's license number xxx9802, which the evidence shows was fraudulently obtained by William Steve Ishmell.

23.    I compared the signature on the back of  GEICO check number N82602458 with that on District of Columbia driver's license number xxx9802, issued to Anthony Ishmell, Jr., and based on the similarity of the signatures believe that both were made by the same person, namely William Steve Ishmell.

13

24.    I reviewed the GEICO file for claim number 0179977180101010, filed against a third-party's GEICO auto insurance policy by Anthony Ishmell (who the evidence shows to be William Steve Ishmell).  I learned from review of this claim file that on or about October 29, 2007, Anthony Ishmell claimed damages to his 1989 Toyota Camry caused when his daughter collided with another vehicle.

25.    The GEICO claim file for the October 29, 2007 loss contains a damage estimate indicating that on October 30, 2007 Anthony Ishmell brought the damaged Toyota Camry to GEICO's inspection station in Clinton, Maryland.

26.    The GEICO claim file for the October 29, 2007 loss contains a copy of GEICO check number N82602899, dated November 7, 2007 and payable to Anthony Ishmell, Jr., 1334 Valley Place SE, Washington, DC 20020, in the amount of $437.52, in settlement of the claim.   The back of this check contains a signature for Anthony Ishmell and the notation "xxx9802 DC x/xx/60" which corresponds to the information (license number and date of birth) on the District of Columbia driver's license which, the evidence shows, was fraudulently obtained by William Steve Ishmell.

27.    I compared the signature on the back of  GEICO check number N82602899 with that on District of Columbia driver's license number xxx9802, issued to Anthony Ishmell, Jr., and based on the similarity of the signatures believe that both were made by the same person, namely William Steve Ishmell.

2.5 <u>WILLIAM ISHMELL PROVIDED FALSE IDENTIFICATION INFORMATION TO</u>
<u>CREDITORS</u>

28. I reviewed January 2007 reports provided by the three credit reporting agencies for
Anthony Ishmell, Jr., Social Security Number xxx-xx-2574 (a number which the Social Security
Administration confirmed has never been issued). This information indicates that Ishmell has
three credit accounts placed in collections and two credit accounts written off as losses by the
respective creditors.

29. I reviewed January 2007 credit reports for Derrick Anthony Ishmell, date of birth; xxxxxxx
xx, 1967, Social Security Number xxx-xx-9822 (a number which the Social Security
Administration confirmed is not associated with a Derrick Anthony Ishmell born on xxxxxxx xx,
1967). This information indicates that Ishmell has two Ford Motor Credit accounts in collection
status: one with an unpaid balance of $22,800, and a second with an unpaid balance of $37,100; a
$250 judgement filed by Enterprise Rent A Car, a $19,209 account charged off by Ford Motor
Credit, and another Ford Motor Credit Account which was closed with an unpaid balance of
$15,103 after the vehicle was repossessed.

2.7 <u>PLACE OF RESIDENCE</u>

30. The United States Postal Inspection Service (USPIS) informed me that on July 18, 2007,
Donna Ishmell requested a "family" change of address requesting that all mail be forwarded from
xxx xxxxxxxx xxxxxx xx, Washington, DC 20017 (xxx xxxxxxxx xxxxxx) to 1334 Valley
Place SE, Washington, DC 20020 (1334 Valley Place). On the same date, Dana Greene also
requested a "family" change of address requesting that all mail be forwarded from xxx xxxxxxxx
xxxxxx to 1334 Valley Place. USPIS told me that these requests, both effective on July 18,

15

2007, cause all mail delivered to xxx xxxxxxxx xxxxxx and addressed to individuals with the last names "Greene" and "Ishmell" to be forwarded to 1334 Valley Place.

31.    On October 26, 2007, I received information from the U.S. Postal Inspection Service indicating that in the previous ten days, mail addressed to Derrick A. Ishmell; William Ishmell; Anthony Ishmell; Donna Ishmell, and others, was delivered to 1334 Valley Place SE, Washington, DC 20020.

32.    I reviewed insurance policy and claim file information provided by GEICO and learned that on or about May 21, 2007, William Steve Ishmell, using the alias of Anthony Ishmell, obtained a GEICO auto insurance policy and provided GEICO with a home address of 1334 Valley Place SE, Washington, DC 20020.  November 2007 correspondence from GEICO to Anthony Ishmell is addressed to Ishmell at 1334 Valley Place SE, Washington, DC 20020.

3.0    <u>CONCLUSION</u>

33.    Based upon my training and experience as a Special Agent assigned to investigate white collar crimes, I know that individuals routinely maintain identification documents, automobile related records and documents, and insurance, financial, and personal records, both legal and illegal, for a period of years.   I also know that it is common for persons involved in insurance fraud and other financial crimes to store evidence and the proceeds of their crimes in secure locations within their residences.  Records and documents maintained at the Washington, DC residence of Dana L. Greene and William Steve Ishmell may further establish the criminal offenses alleged, and may further expose the relationship between the subjects and their co-conspirators, both known and unknown.

16

34.    Based upon the foregoing information, the subjects of this investigation have in multiple instances been represented by an attorney in connection with the filing of the subject insurance claims.  Accordingly, one or more agents and attorneys will be designated to review any documents and electronic evidence that may be connected to any legal representation.  These agents and attorneys will remain segregated from the investigating team and any evidence that may contain privileged matters will be sealed and reviewed to determine whether the materials contain privileged matters, and whether the materials should be presented to a judicial officer to determine if any of the materials may be disclosed under the crime-fraud exception to the attorney-client privilege doctrine.  These agents and attorneys will be instructed not to communicate with any of the investigators, attorneys or any other parties conducting the grand jury investigation.

35.    Based on the above information, I believe that Dana L. Greene and William Steve Ishmell, also known as Derrick Ishmell, Sr., Derrick Andrew Ishmell, Anthony Ishmell, and Anthony Ishmell, Jr., and others committed and conspired to commit the offenses listed under Section II of this Affidavit, and that evidence of these offenses will be located at 1334 Valley Place SE, Washington, DC 20020, a residence further described in Attachment A, attached hereto and incorporated herein by reference.

36.    I therefore respectfully request that a Search and Seizure warrant be issued for the premises

further described in ATTACHMENT A.


_____
        Robert L. Werner
        Special Agent
        Federal Bureau of Investigation
        Falls Church, Virginia

Subscribed and sworn to before me this_____day of December, 2007.



_____
        U.S. Magistrate Judge

18

ATTACHMENT A

Description of Premises to Be Searched

     1334 Valley Place SE, Washington, DC 20020 is a two story, single family, detached residence, further described in District of Columbia records as Square/Suffix/Lot number 5799 0847. The outside of the residence is finished in white, horizontal siding, and has an open, covered front porch. The porch roof is supported by four pillars. The front door to the residence faces Valley Place SE. The number "1334" is clearly visible in vertical numbering on the siding immediately to the left of the front door. The lot for 1334 Valley Place SE is surrounded by a chain link fence.

ATTACHMENT B

Items To Be Seized

Based on the facts recited in the attached affidavit, your affiant has probable cause to believe that the following records are located at the premises described in Attachment A. Furthermore, your affiant believes these records contain fruits, instrumentalities, and evidence of the crimes described in this affidavit.

The terms "records", "documents", and "materials" include all of the following items of evidence in whatever form and by whatever means such records, documents, or materials, their drafts, or their modifications may have been created and stored, including but not limited to: any handmade form (such as writing or drawing with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as phonograph records, printing, or typing); and any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebook, as well as printouts or readouts from any magnetic storage device).

Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Data search protocols are scientific procedures designed to protect the integrity of the evidence to recover even hidden, erased, compressed, password protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a booby trap), a controlled environments is essential to its complete and accurate analysis, and therefore it may be necessary to remove computers found at the above premises for search at an offsite location.

(A)    Items subject to search and seizure are as follows:

Any and all records, documents, and materials pertaining to or showing a relationship between or among: William Steve Ishmell; Derrick Andrew Ishmell; Derrick Ishmell, Sr; Derrick Ishmell, Jr.; Anthony Ishmell; Anthony Ishmell, Jr.; Dana L. Greene; Donna Ishmell; Steven Ishmell; and any other individual with the last name of Ishmell or Greene, including but not limited to: birth certificates; photographs; correspondence; letters; greeting cards; marriage certificates; police and court records; and divorce decrees.

Any and all records, documents, and materials pertaining to automobiles, including but not limited to: registration; insurance; rental agreements; titling; sales; and any applications for these items.

20

Any and all records, documents, and materials pertaining to identification, including but not limited to: birth certificates; driver's licenses; photo identification cards; passports; Social Security cards; and any application for these items.

Any and all records, documents, and materials pertaining to personal finances, financial transactions, tax information, employment, and wages, including but not limited to: cash; pay stubs; bank statements; checks; check registers; check stubs; wire transfer receipts; deposit slips; mortgages; rental contracts; income tax returns; and Internal Revenue Service forms 1099 and W-2.

Any and all records, documents, and materials pertaining to medical information, including but not limited to: personal injury; medical evaluation and treatment; medical appointments; medical receipts; and physical therapy.

Any and all records, documents, and materials used to record, store, or retrieve names, addresses, telephone numbers, and messages.

All passwords, instructions, and manuals for software programs pertaining to individuals referenced in the attached affidavit.

All records, documents, and materials relating to access numbers, storage facility rental agreements and/or contracts. In addition, all keys to storage lockers or other storage-type facilities, or United States Postal Service or similar depository access keys.

(B)     Computer-related items subject to search and seizure are as follows:

To effectuate the search and to the extent necessary retrieve responsive documents which may be stored electronically, the following items will be seized as needed:

(1)     Hardware

Computer hardware consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computerized impulses or data. Hardware includes, but is not limited to, any data processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or part that can be used to restrict access to computer hardware (such as physical keys and locks).

21

(2)    Documentation

Computer-related documentation consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use the computer hardware, software, or other related items.

(3)    Software

Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs.

(4)    Passwords and Data Security Devices

Computer passwords and any other data security devices are designed to restrict access or hide computer software, documentation or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make inaccessible or unusable, as well as reverse the process to restore it.

22